# EDWARD A. MULFORD *et al*

*v.*

# JAMES H. BEVERIDGE *et al.*

1. GUARDIAN'S SALE OF REAL ESTATE. Proceedings by a guardian to sell real estate for the maintenance of the ward is a proceeding purely *in rem.* No parties are necessary. It is *ex parte,* in the name of the guardian, on behalf of the ward, after notice to all concerned. In this particular, it differs from proceedings to sell real estate to pay debts, where the heirs are necessary parties.

2. It is the duty of a guardian making sale of real estate of his ward, to report his proceedings to the court granting the order, but as to what portion of the proceedings, or at what stage of the case the report is to be made, the statute is silent.

3. Where the decree of the court authorizing a guardian to sell real estate of his ward directed him to report such sale to the court for approval and confirmation before the same should be completed, and a sale was made, reported and approved, and, subsequent to such approval, a deed was executed by the guardian, to be delivered to the purchaser upon his securing the purchase money as required by the decree, the interest of the ward was thereby vested in such purchaser, subject to be divested in case of non-payment or refusal to secure the purchase money as required by the decree.

4. SAME—*delivery of deed to purchaser, under certain circumstances, not essential to pass title.* In this case, a guardian sold land, and executed a deed to be delivered to the purchaser upon his securing the purchase money, in accordance with the decree. The purchaser failed to do so, but, by an arrangement between the guardian and the purchaser, the latter conveyed the land to a third party, by deed, absolute on its face, but to be held by such third party and re-sold by him, and, afterwards, he did re-sell it for more than the amount bid by the purchaser at the guardian's sale, and the proceeds were accounted for to the guardian: *Held,* that, under these circumstances, it was not material whether the deed from the guardian to the purchaser at the guardian's sale was ever in the actual possession of such purchaser or not. What occurred was equivalent to a delivery, and the title acquired under these circumstances was valid.

5. The conveyance to the third party did not vest the title in him to hold permanently for the benefit of the wards, as trust property, but was in the nature of a mortgage to secure the purchase money for which the property had been sold at the guardian's sale, and he could re-sell it for that purpose without any further order of the court.

456     Mulford *et al.* *v.* Beveridge *et al.*     [Sept. T.

Opinion of the Court.

6. Same—*not affected by irregularities after the decree of sale and the subsequent management of the funds.* Where the court has jurisdiction, and makes an order of sale, the fact that the guardian may proceed irregularly in the execution of the order, will not make the sale invalid.

7. The purchaser at a guardian's sale is not bound to see to the application of the funds, nor that the guardian renders a true account of his guardianship, and a failure on the part of the guardian in this respect can not vitiate the sale.

APPEAL from the Circuit Court of Cook county; the Hon. E. S. WILLIAMS, Judge, presiding.

Messrs. DICKEY & CAULFIELD, for the appellants.

Mr. JAMES L. HIGH, and Mr. CHARLES H. WOOD, for the appellees.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the Court:

The original bill in this case was filed in 1863, by the heirs of Edward A. Mulford, deceased, all of whom were then minors, to set aside a deed, dated April 29, 1857, made by their guardian under an order of court, conveying to John McHugh a tract of land which they had inherited from their deceased father. The estate had been conveyed several times, but the grantees all being charged with having had notice of the equities of complainants, they were made defendants, and relief was sought against them.

· Briefly, the facts are: McHugh bid off the land at the guardian's sale. A deed was made, ready to be delivered to him if he should comply with the conditions as to securing the purchase money, but, for some reason, he failed to comply. Either on his own proposition or at the request of John L. Beveridge, the solicitor of the guardian, McHugh conveyed the land to him, to be by him re-sold for the benefit of the wards. A sale was effected to James H. Beveridge, for a sum exceeding the amount bid by McHugh, which was treated as other funds belonging to the common estate. James

H. Beveridge afterwards conveyed two-fifths of the land to his brother Andrew M. Beveridge. On the hearing, the circuit court decreed relief, and set aside the several conveyances. That decree was, however, afterwards reversed in this court, on account of error that intervened, not affecting the merits of the case.

Meanwhile, by the death of one of the original complainants, and the marriage of another, the heirs of the deceased ward and the husband of the other became necessary parties, and were made so by an amended and supplemental bill, by which John L. Beveridge was also made a party defendant. Mrs. Mulford, who was the guardian that made the sale of complainants' land, afterward intermarried with Haggerty, and became a party complainant as one of the heirs of her deceased ward. After a cross-bill had been filed by Andrew M. Beveridge to quiet his title, and on the final hearing of the cause, the other complainants asked leave to dismiss her as complainant, and make her a defendant, but the court refused leave. Answers and replications having been filed, proofs were taken, and, on the hearing, the court dismissed the original, amended and supplemental bills, for want of equity, but decreed relief on the cross-bill.

The irregularities that are said to vitiate this sale, and render void all the conveyances to subsequent grantees having notice, all occurred after the decree under which the sale was made.

That the court had jurisdiction to pronounce the decree, is not contested; but if it was, we should regard that question as *res adjudicata* in this court. On bill filed by complainants to contest the validity of other sales of property under this same decree, it was held the court had jurisdiction. *Mulford et al. v. Stalzenback et al.* 46 Ill. 303.

The radical error in the theory of the case on which relief is expected, lies in the assumption that the title never passed to McHugh, for the reason the guardian's deed was never in fact delivered to him.

458          Mulford *et al.* v. Beveridge *et al.*     [Sept. T.

Opinion of the Court.

Proceedings by a guardian to sell real estate for the maintenance of the ward, is a proceeding purely *in rem*. No parties are necessary. It is *ex parte*, in the name of the guardian, on behalf of the ward, after notice to all concerned. In this particular, it differs from proceedings to sell real estate to pay debts, where the heirs are necessary parties under the provisions of our law.

The statute under which this sale was made, provides, an order of the court may enable the guardian to sell and convey the real estate for the support and education of the ward, or to invest the proceeds in other real estate. The court making the order is to direct the time and place of sale, the notice to be given, and may require of the guardian or purchaser such security as the interests of the ward may require. It is made the duty of the guardian making the sale to make return of such proceedings to the court granting the order, which, if approved, shall be recorded, and shall vest in the purchaser all the interest the ward had in the estate sold. R. S. 1845, p. 267, sec. 10.

As to what portion of the proceedings, or at what stage of the case, the report is to be made, the statute is silent. In the case at bar, the order directed the guardian to "report such sale to this court for confirmation and approval before the same shall be completed," which was done, the sale approved and the guardian directed to make the deeds. The statute, in terms, does not require the deed made on the consummation of the sale to be approved by the court, nor did the decree in this case require it. Most material is the sale, that the court may see whether the interest of the ward is being sacrificed. The land was sold to McHugh, the sale approved, the report recorded, and, under the statute, upon the subsequent making of the deed, it would seem that that would vest in him all the interests of the wards, subject, however, to be divested in case of non-payment of the purchase money, or a refusal to secure it as required by the decree. That title was never divested by any order of court. A deed was exe-

cuted to him, in consummation of the sale, under the direction of the court. Whether that deed was ever in the actual possession of McHugh, can not be a material question, in view of what followed. What occurred, was equivalent to a delivery. It could not, with propriety, be delivered to him before the purchase money was either paid or secured. It was treated as having been delivered to him to enable McHugh to convey the property to John L. Beveridge, that he might re-sell it and thus realize the amount bid, for the benefit of the wards. After that there was no necessity for leaving it in his possession. What possible difference could it make to the wards whether McHugh conveyed the land to Beveridge by mortgage deed or an absolute deed, to secure the purchase money? In *Mulford* v. *Stalzenback, supra,* the mortgage given by one of the purchasers was not given to the guardian, as required by the decree, but to a third party, and that was declared to be a mortgage "on the land sold" to secure the purchase price, and, being afterwards satisfied, there was no just ground of complaint on that score. Here, the conveyance was to John L. Beveridge, by the consent of the guardian, and, although absolute in form, it was but a mortgage to secure the purchase price. The land was afterwards sold for a sum in excess of the bid made by McHugh, and the proceeds accounted for to the guardian, for the use of the wards. Thus the original bid and something more was realized. What just grounds, therefore, exist for complaint? By this arrangement, the guardian not only secured the original bid, but a considerable sum in addition. The mortgage required by the decree could not have more effectually secured it, while the mode adopted added a profit. Whether the land was sold to James H. Beveridge for $2000 or $2500, does not affect the legal principle involved. Either sum is in excess of McHugh's bid.

The second objection, assuming the naked title passed to John L. Beveridge by McHugh's deed, it was in trust for the wards, and could not be re-sold without further order from

the court, is founded on a mistaken view of the purpose for which the title was placed in him. The estate was not vested in him to hold permanently, for the benefit of the wards, as trust property; but the conveyance by absolute deed was only another mode, as we have seen, of securing the purchase money, and, as the sequel shows, was both an effectual and profitable mode. Had McHugh, by consent of the guardian, conveyed the land to Beveridge, by deed of trust containing a power of sale, it would hardly be insisted an order of court would be necessary to enable him to exercise the power. It is true, the property was in Beveridge in trust for the benefit of the wards, but it was there to be re-sold, in execution of the order of the court, in the language of the statute, to "enable the guardian to sell and convey the real estate for the support and education of" her wards. No further order of the court was necessary to enable him to make the sale. That had already been made, and the guardian directed, by further order, to complete it. Inasmuch as the wards were benefited, and in no manner injured by the mode adopted, it affords no just cause for setting the sale aside.

The other irregularities insisted upon have reference to the execution of the order of sale and the subsequent management of the funds. The court had jurisdiction, and, notwithstanding the guardian may have proceeded irregularly in the execution of the order, the sale, for that reason, is not invalid. This point was expressly ruled in *Mulford* v. *Stalzenback, supra,* and authorities are there cited in support of the principle.

The fact that the guardian may have reported to the court a less amount than the property really sold for, can not vitiate the sale. On a bill by the wards, against their guardian, for an account, that would be an important inquiry, but it can not affect the title acquired by the purchaser. He was not bound to see to the application of the funds, nor that the guardian rendered a true account of her guardianship.

That this estate that descended to complainants from their father, now of the value of between a quarter and a half mil-

lion of dollars, has been substantially lost to them, is no doubt true, but no part of that loss can be attributed to the fact McHugh did not secure his bid for a portion of the estate by a mortgage to the guardian, instead of by an absolute deed to John L. Beveridge.

In view of the extraordinary rise in the value of real property, it is perhaps unfortunate that any portion of complainants' estate was ever ordered to be sold, but that affords no sufficient reason for setting the sale aside. No doubt many other tracts of land in the vicinity have, since then, been sold at private sale by the owners, and voluntary conveyances made, that have correspondingly increased in value.

It is a matter of public notoriety, of which courts may take judicial notice, that real property in the vicinity of Chicago, where this is situated, has, since this land was sold, increased in value many times. This fact, no doubt, has given rise to much complicated litigation in regard to real estate.

When the case was about to be submitted for decision, after the evidence had all been heard, complainants again asked leave to file another amended bill, to make the pleadings correspond more nearly with the facts proven, which was denied by the court. Whether they were entitled, at that stage of the case, as a matter of right, to file another amended bill, is a question about which we need not express an opinion. The amended bill was but a re-statement of the facts in the case as the complainants understood the evidence. Even conceding the right, no grounds for relief were shown; hence complainants were not prejudiced by the decision of the court refusing leave to file the amended bill.

Whether the court proceeded regularly in decreeing relief on the cross-bill of Andrew M. Beveridge, did not affect prejudicially the rights of complainants, for the decree dismissing the original, amended and supplemental bills, for want of equity, would as effectually bar their rights as the decree on the cross-bill quieting title.

Waiving all questions whether the proof and allegations of the bill correspond, the evidence shows no ground for equitable relief, and the decree must be affirmed.

*Decree affirmed.*

Mr. JUSTICE SCHOLFIELD and Mr. JUSTICE CRAIG, dissenting:

We do not concur in this opinion. We hold that the confirmation of the guardian's report can vest title in the purchaser only when it shows a sale, and the execution and delivery of a deed, in conformity with the terms of the statute. Title can not pass except by the execution and delivery of the deed. The evidence is clear that McHugh did not comply with the terms of the sale, and no deed was ever delivered to him. He, therefore, never had title. John L. Beveridge knew this when he obtained the pretended title. He was attorney for the guardian, and the proceedings connected with the pretended sale were all taken under his direction. He could not purchase from the guardian at private sale, and he could not purchase from McHugh a title which McHugh did not have. Whatever may be said in favor of Andrew M. Beveridge as a purchaser in good faith, without notice, can not apply to James H. Beveridge. He should be charged with notice, and to the extent of his interest, at all events, we think the decree should be reversed.