## WILLIAMS et al. v. FRANCIS.

No. 8131—Opinion Filed May 22, 1917.

(166 Pac. 699.)

**Guardian and Ward—Rights of Ward.**

Where a guardian in payment of his own debt executes and delivers a receipt in satisfaction of obligations due his ward, the obligor, if he has notice, takes at his peril, and the ward may recover from him upon such obligations.

(Syllabus by Bleakmore, C.)

Error from County Court, Creek County; Vick S. Decker, Judge.

Action by Monroe Francis, as guardian of Davis Williams, against Geo. W. Williams and another. There was a judgment for plaintiff, and defendants bring error. Affirmed.

Wm. L. Cheatham, for plaintiffs in error.

Burk & Harrison and S. H. Sornborger, for defendant in error.

Opinion by BLEAKMORE, C. This action was commenced in the county court of Creek county by Monroe Francis, as guardian of Davis Williams, a minor, against George W. Williams and A. H. Stone, seeking recovery of rental alleged to be due under the terms of a written contract of lease. Defendants, admitting the execution of the lease, etc., pleaded payment. A jury was waived, and, upon trial to the court, judgment rendered for plaintiff, to reverse which defendants have brought the case here.

It appears from the record that on March 24, 1913, Monroe Francis, as guardian of Davis Williams, pursuant to an order of the county court, executed and delivered to George W. Williams agricultural leases upon the lands of his ward for a term of five years, commencing January 1, 1914, in consideration of the lessee undertaking to pay certain stipulated sums annually in advance. Shortly after their execution George W. Williams assigned these leases to defendant Stone, who, with knowledge of all the facts and circumstances, went into possession of the premises and has since used and occupied the same. Monroe Francis was at the time indebted to Stone in a sum of about $1,200, a portion of which was evidenced by promissory notes. Solely in exchange for such notes and the satisfaction of his individual indebtedness Francis executed and delivered the following receipt, which Stone personally prepared, has since retained, and now contends constitutes evidence, unimpeached, of the payment of the installments of rent sued for and conceded to be due under the terms of the lease contracts at the time of the commencement of this action:

"March 26, 1913.

"Received of George W. Williams $625.00, rental for years 1914, 1915, 1916, 1917, 1918, being $125 per year for each year mentioned, royalty on agricultural lease rescribed as follows—S. E. ¼ of S. W. ¼, and S. ½ of N. E. ¼ of S. W. ¼, section 15, township 16 N., range 9 E. The allotment of Davis Williams.

"Monroe Francis,

"Guardian for Davis Williams."

Here Francis attempted to release obligations due his ward in satisfaction of his own debt, the defendants at the time being fully advised of the fiduciary character in which he acted, the receipt, prepared by them, on its very face, specifically showing that the rentals constituting such obligations were the property of his ward, properly payable and to be held by him only in trust in his capacity as guardian.

A guardian deals with the estate of his ward, in the fullest sense, as trustee; and it is a familiar principle that all persons with notice, acquiring property bound by a trust, do so at their peril. In Fidelity & Deposit Co. of Maryland v. Rankin, 33 Okla. 7, 24 Pac. 71, it is held:

"Where a person holding money in a fiduciary capacity pays or transfers it to a bank with notice of his relation to it, for a purpose foreign to the trust, the bank cannot hold the money as against the true owner.

"(a) An action to recover same will lie in favor of the true owner as against the party to whom the trust fund was transferred contrary to the trust."

In Carpenter v. McBride, 3 Fla. 292, 52 Am. Dec. 379, it is held:

"Where guardian transfers obligation due ward in payment of his own debt, the purchaser, if he has notice, takes it at his peril, and the ward can charge him with the obligation."

In McDuffie v. McIntyre, 11 S. C. 551, 32 Am. Rep. 500, it is held:

"A guardian sold his ward's bond and mortgage, the purchaser paying in part by applying a debt past due to him from the guardian personally. The guardian became insolvent and failed to account, and his bond became worthless. There was no evidence of the proper application of the purchase-money. The purchaser knew of the trust. Held, that the purchaser got no legal title, and equity would not uphold the transfer under such circumstances."

See, also, First Nat. Bank v, Greene (Ky.) 114 S. W.· 322; U. S. Fidelity & Guaranty Co. v. Adoue, 104 Tex. 379, 137 S. W. 648, 138 S. W. 383, 37 L. R. A. (N. S.) 409, Ann. Cas. 1914B, 667; Mulford v. Beveridge, 78 Ill. 455; Allman v. Taylor, 101 Ill. 193; Thomosson v. Brown, 43 Ind. 203; Nugent v. Laduke, 87 Ind. 482.

In Field v. Schieffelin, 7 Johns Ch. (N. Y.) 150, 11 Am. Dec. 441, Chancellor Kent states the rule as follows:

"I have thus looked pretty fully into the decisions in the analogous case of a purchase from an executor of the testator's assets; and they all agree in this: That the purchaser is safe if he is no party to any fraud in the executor and has no knowledge or proof that executor intended to misapply the proceeds, or was, in fact, by the very transaction applying them to the extinguishing of his own private debt. The great difficulty has been to determine how far the purchaser dealt at his peril, when he knew from the very face of the proceeding that the executor was applying the assets to his own private purposes, as the payment of his own debt. The latter and better doctrine is that in such a case he does buy at his peril."

In Allison v. Crummey et al., 64 Okla. '20, 166 Pac. 691, it is announced:

"A sale of real estate belonging to an estate, by an administrator or guardian, made in violation of his trust and of the order of the court authorizing the sale, is not in the strict sense void, but voidable, and the invalidity of such sale is made to depend, not on the fact that the estate received no benefit, but on the fact that the purchaser was a guilty participant in the wrongful sale, and that his title might be assailed upon the theory that he ought not in equity and good conscience profit by his wrongful conduct or by acts of which he had guilty knowledge."

It follows that the judgment of the trial court was correct, and should be affirmed.

By the Court: It is so ordered.