AUSTIN *et al. v.* WILLSON's Executors.

EXECUTORS AND ADMINISTRATORS.—An executor can not lawfully appropriate the assets of the estate of his testator to the payment of his individual debts, and his individual creditor who so receives them, with notice of their character, and of the relations of the debtor to the estate, may be required to repay them to the estate.

PRACTICE IN SUPREME COURT.—Where the evidence tends to sustain the finding of the Court below, this Court will not reverse the judgment for alleged error in overruling a motion for a new trial on the ground of insufficient evidence.

APPEAL from the *Floyd* Circuit Court.

In *February,* 1859, *Hiram Willson* died, testate, and his son, *Byron F. Willson,* and his brother, *Asbury C. Willson,* soon after became executors of his will. The testator, in his lifetime, was a lumber merchant, and, at his death, was the owner of a large quantity of lumber, then situated, in part, in the city of *New Albany, Indiana,* and in part in the town of *Columbia,* near the city of *Cincinnati, Ohio.* Soon after their appointment, his executors sold the entire stock of lumber, to *John Austin* and *Peleg M. Wilcox,* and received their notes, with personal security, for the purchase-money. The notes were made payable to the executors in their fiduciary capacity. Within a few days after such sale, *Asbury C. Willson* became a partner with *Austin* and *Wilcox* in the ownership and sale of said lumber, and immediately removed from the city of *New Albany* to *Columbia,* and assumed the chief management of the business of the partnership, and ceased to take any part in the settlement or administration of said estate, but did not resign his executorship. In 1861, suits were instituted upon said notes, in the names of said executors, and judgments recovered in their favor, as such executors, against the makers and their sureties. Prior to *May* 26, 1862, said *Byron* caused execution to be issued upon said

Austin et al. *v.* Willson's Executors.

judgments, and, on the latter day, said *Austin* and *Wilcox* procured from said *Asbury*, at *Columbia*, where he had ever since continued to reside, the following receipt:

"Received, *May* 26, 1862, of *John Austin* and *Peleg M. Wilcox*, 3,000 dollars, on two certain judgments rendered in the *Floyd* Circuit Court, at its *October* term, 1861, in favor of *Byron F. Willson* and *Asbury C. Willson*, executors of the last will of *Hiram Willson*, deceased, and against *Austin* and *Wilcox*, and others, one-half of said sum to be credited on each of said judgments.

"ASBURY C. WILLSON, Executor, &c."

On *May* 28, 1862, *G. C. Cannon* and *H. O. Cannon*, two of the sureties on said notes, and defendants in said judgments, paid to the Clerk of said Court the principal and interest then due on said judgments, producing the foregoing receipt as part payment, and procured him to indorse on each of said judgments the following entry:

"Received of *G. C. Cannon* and *H. O. Cannon*, amount in full of this judgment, interests and costs, of which 1,500 dollars is on a receipt from *Asbury C. Willson*, executor, &c.

"W. W. TULEY, Clerk."

The said *Byron*, as to said 3,000 dollars, insisted that the same constituted no payment on said judgments, disregarded said entry of satisfaction by the Clerk, and sued out executions to collect said sum. Thereupon the appellants instituted this action to enjoin the collection of said sum, and to enforce the entry of satisfaction of said judgments.

Said *Byron*, for separate answer and cross-complaint, averred the facts above stated, touching the origin of said judgments, the association of said *Asbury* with said *Austin*

and *Wilcox*, his removal from the State, his failure to partici-
pate in the settlement of said estate; and he further averred,
that the plaintiffs, knowing said facts, and to prevent the col-
lection of said 3,000 dollars, procured the receipt from said
*Asbury*, above set out, and that, on *June* 14th, 1862, said
*Asbury* was, by the proper Court, removed from the office of
executor, and that he had no longer any authority in relation
to said estate, and prayed that said receipt, from said *Asbury*,
be canceled, and for general relief. The plaintiffs demurred
to the said cross-complaint, and their demurrer was over-
ruled, to which they excepted. There was also a general de-
nial of the complaint. Said *Asbury* answered the complaint
by general denial, and admitted the averments in the cross-
complaint. The cause was tried by the Court.

The testimony on the trial established the facts hereinbe-
fore stated. It also appeared that said *Byron* had no knowl-
edge of the execution of said receipt, until the same was filed
with the Clerk, and never received any part of the sum
therein named. Said *Asbury* testified that he sold said lum-
ber as the partner and agent of said *Austin* and *Wilcox;* that he
executed said receipt at *Cincinnati*, at the request of said *Wil-
cox* and *G. C. Cannon;* that they paid him no money; that
he owed the firm of *Austin & Co.*, of which he was a mem-
ber, something near 3,000 dollars, in part for the purchase-
money for his interest in the partnership, and in part for
money he had collected on sales of partnership property,
and converted to his own use; that he had at the time no
money on hand, and so informed them; that he gave said
receipt in payment of said indebtedness; that they first sug-
gested that mode of payment; that he told them he was not
satisfied he had any right to give such receipt, and they said
he had. Said *Wilcox* testified that said *Asbury* first proposed
to give said receipt; that he, *Wilcox*, thought it would be
right, and that he did not know that said *Byron* was the sole

Austin et al. *v.* Willson's Executors.

acting executor; that he did not ask said *Asbury* if he had any money on hand, but supposed he ought to have some on hand, and that about 3,000 dollars was found to be due from him to the other partners, and that before he, *Wilcox*, started to *Cincinnati*, his attorneys gave him a form of receipt from which he there copied the one in question.

Said *G. C. Cannon* testified that the receipt was written at *Willson's*, in *Cincinnati;* that he understood the balance due from *Asbury* to the other partners was upwards of 3,000 dollars; that he can't tell who proposed the receipt; that he did not then know said *Byron* was the sole acting executor; that *Wilcox* told him, before they went to *Cincinnati*, that he wanted to get the money from *Asbury* on such receipt, and that after they got there, money was not mentioned in the interview, but that he may not have heard all that was said.

Finding and judgment for the defendants. Appeal by the plaintiffs.

*George V. Howk* and *R. M. Weir*, for the appellants, argue:

Co-executors are regarded in law as an individual person; and the acts of any one of them, in respect to the administration of the effects, are deemed to be the acts of all; for they have all a joint and entire authority over the whole property. Hence, a release of a debt, by one of several executors, is valid, and shall bind the rest. 2 Will. on Ex. 810; 8 Blkf. R. 170; 9 Cow. R. 34; 11 Johns. R. 16; 1 Wend. R. 583; 4 Hill R. 492.

The judgments were recovered by said *Byron* and *Asbury* on notes payable to them, and the judgments thus became a debt to them in their personal capacities. *Savage* v. *Meriam*, 1 Blackf. 176. They might have sued in their own names, and not in their representative character. *Helm* v. *Van Vleet*, 1 Blackf. 342. They have full and absolute power over the judgments, not as executors, but in their individual rights. 6 Blackf. 364.

The Toledo and Wabash R. R. Co. v. Daniels.

*Thomas L. Smith* and *M. C. Kerr*, for the appellees, argue:

The plaintiffs attempt, in this case, to collect a personal demand due to them from a person who is an executor of an estate, by inducing him, as such executor, to enter satisfaction of a judgment due from them to such estate; in other words, by inducing such executor to appropriate the assets of the estate to the payment of his individual debts; and they attempt this with full notice of his relations to the estate. Such transactions are utterly inconsistent with good faith, and in violation of established principles of law. Will. on Ex. 5 Am. ed. 841; *Talbott, Adm'r,* v. *Dennis,* 1 Ind. 471; *Chandler* v. *Schoonover,* 14 Ind. 324.

*Per Curiam.*—This case, we think, clearly falls within the cases of *Talbott, Adm'r* v. *Dennis,* 1 Ind. 471, and *Chandler, Adm'r* v. *Schoonover,* 14 Ind. 324, if the evidence sustains the finding of the Court.

The rule is, that where the evidence tends to sustain such finding, or the verdict of a jury, the appellate Court will not reverse the judgment of the Court below for alleged error in refusing a new trial. In this case, the evidence is clearly in favor of the finding below. The question of damages will come up before the lower Court, on the dissolution, by that Court, of the injunction it granted herein.

The judgment is affirmed, with costs.