Gwinn and Wife *v.* Williams and Others.

Vendor and Purchaser.—*Guardian's Sale of Real Estate.—Fraud.*—A guardian, for the purpose of obtaining to himself the title to the real estate of his ward, procured an order of sale and sold the land at public sale, but made report that he had sold at private sale as ordered by the court. He procured a person to bid off the land for his benefit and discouraged and prevented others from bidding. The purchaser assigned to the guardian the certificate of purchase given him by the guardian, and received back his notes for the deferred payments, the first payment not having been made, though the guardian had reported full payment. The commissioner appointed to make conveyance executed a deed to the guardian as assignee of the purchaser. The proceedings as they appeared upon the record were regular and valid. *Held,* that, as between the guardian and ward, the title of the former was bad, but not so the title of a purchaser from the guardian for a valuable consideration and without notice of the fraud, or the title of the vendee of such a purchaser.

APPEAL from the Johnson Circuit Court.

Elliott, J.—This was a complaint by William M. Gwinn and Mary, his wife, formerly Mary Sanders, a daughter of one Daniel Sanders, deceased, against Henry Tucker, Phebe Hays and Joel Williams, to set aside, as fraudulent, certain conveyances of a tract of land, of one undivided half of which, it is claimed, the plaintiff Mary Gwinn is the owner in fee. The issues formed in the case were tried by the court, the trial resulting in a finding and judgment for the defendant. A motion for a new trial was overruled.

The case is here on the evidence. The facts shown by the record are, in substance, as follows: Daniel Sanders died seized of the land in controversy, prior to 1852, leaving a widow and three daughters—Mary, one of the plaintiffs, Caroline, and Nancy Ann. In 1852, the defendant Henry Tucker (who died during the pendency of this suit, his heirs being substituted as defendants) married the widow, and was appointed guardian of the persons and estates of the children by the Probate Court of Johnson county; and in August, 1852, petitioned said Probate Court for an order to sell the land, subject to the widow's dower;

alleging that the land was going to decay and becoming less valuable; that the wards had not derived any material benefit therefrom; that they had no other means to defray the expenses of their keeping, clothing, and education; and that it would be to their interests to have the land sold, and the proceeds put at interest or invested in other lands. The record shows that an inventory and appraisement of the land was made by two disinterested appraisers, who, under oath, appraised it subject to the widow's dower, at twelve hundred dollars, which was filed in said court; that the guardian gave bond with surety in double the appraised value, which was approved by the court; and thereupon the court ordered that the guardian proceed to sell the land at private sale, at a sum not less than the appraised value thereof, the purchaser being required to pay one-third of the purchase money down, one-third in twelve months, and the remainder in eighteen months, from the day of sale, to be secured by note, without relief from valuation or appraisement laws; that at the succeeding January term of said Probate Court, the guardian filed a report in writing, stating, among other things, that pursuant to the order of the court, he did, on the 11th day of September, 1852, sell the land (which is described), subject to the widow's dower, to James J. Tucker for the sum of seventeen hundred and ten dollars and fifty cents, being more than its appraised value, and being the best price which could be obtained for the same; and that the whole of the purchase money had been paid. The report was verified by affidavit, and was confirmed by the court, and Daniel McKinney was appointed a commissioner to make and execute to the purchaser or his assigns a deed of conveyance of the land, subject to the widow's dower.

The guardian executed to James J. Tucker, the purchaser, a certificate of said purchase, dated September 11th, 1852, entitling him to a deed upon the payment of the purchase money, should the sale be confirmed by the court. On the 27th of September, 1852, James J. Tucker assigned the cer-

tificate of purchase to Henry Tucker, the guardian. On the 8th of January, 1853, McKinney, the commissioner appointed by the court for that purpose, executed a deed for the land to Henry Tucker, as assignee of James J. Tucker, the purchaser, which was reported to, and confirmed by, the court. The deed recites the facts set forth in the petition, the order of sale and the report and confirmation thereof, his order of appointment, the certificate of purchase to James J. Tucker, and the assignment thereof to Henry Tucker. The widow of Sanders subsequently died, and Nancy Ann, one of the children, also died, soon after her mother, intestate and without issue.

Henry Tucker continued in possession of the land until November 11th, 1859, when he sold and conveyed it to Phebe Hays, for a valuable consideration, and she on the 23d of January, 1863, sold and conveyed it to Williams, who is still in possession.

Parol evidence given in the case very clearly proves that the only object of Henry Tucker, the guardian, in petitioning for the sale of the lands, was to procure the title to himself, at the lowest possible price, in total disregard of the interest of his wards. He sought to procure some one to become the purchaser for his benefit, and upon disclosing his object to an attorney, he was advised that he would better sell it at public sale, which, in fact, he did, though he reported it as sold at private sale. He finally procured James J. Tucker, a relative, to bid it off for his benefit, and at the time of the sale used every effort in his power to prevent others from bidding, by notifying them that they must show their money, and that he would not receive the bid of any one unless he had money enough there to meet the first payment; and in that way actually prevented one person from bidding who came to the sale for that purpose, but who had not brought his money with him.

There was but a single bidder present who was thus qualified, and he ran the land up to within a few cents of the price at which it was finally bid off by James J. Tucker.

James J. Tucker was a witness on the trial, and testified that Henry Tucker procured him to bid off the land for his, Henry's, benefit, but that he was limited in price to one thousand seven hundred dollars; and that he finally bid it off at one thousand seven hundred and ten dollars and fifty cents, on his own responsibility and for himself, as it went beyond the limit fixed by Henry. He admits that he did not pay the first payment, but says that when Henry delivered him the certificate of purchase he executed notes for the deferred payments, which were returned to him by Henry when he transferred to the latter the certificate of purchase. Thus Henry, by a false report, procured the title to the land, without any portion of the purchase money having, in fact, been paid; although he subsequently accounted for it to his successor in the guardianship.

The case would be a clear one if the title had remained in Henry Tucker till after the commencement of the suit; but he sold and conveyed the land to Mrs. Hays some years before the suit was commenced.

The proceedings under which Henry Tucker procured his title were regular and valid, as they appear upon the record. Mrs. Hays purchased for a valuable consideration, and there is no evidence that she had any notice of the fraud of Henry Tucker; indeed, the evidence proves the reverse. Her title is therefore good, as she is protected as a purchaser for a valuable consideration without notice of the fraud, and that protection extends to Williams, her vendee.

The judgment of the Circuit Court must therefore be affirmed.

The judgment is affirmed, with costs.

*F. M. & J. A. Finch* and *D. D. Banta*, for appellants.

*G. M. Overstreet* and *A. B. Hunter*, for appellees.