# Wallace *et al.* v. Nichols' Admr.

*Bill in Equity to enforce Vendor's Lien on Lands sold by Administrator under Probate Decree.*

1. *Sale of decedent's lands, under probate decree, for payment of debts; vendor's lien.*—When lands are sold by an administrator, under a decree of the Probate Court, for the payment of debts (Rev. Code, §§ 2079–96), the purchaser has no right to a conveyance, until he has paid the whole of the purchase-money; and although the administrator falsely reports that the purchaser has made the required cash payment, and has otherwise complied with the terms of sale, and the sale is confirmed by the court, and a conveyance is executed to the purchaser by the administrator, under the order of the court, before the credit payment has become due, the title of the heirs is not divested, and the land remains bound for the payment of the purchase-money.

2. *Same; when purchaser is chargeable with notice.*—Sub-purchasers of land, sold under a probate decree for the payment of debts, succeed only to the rights of their vendor, the original purchaser, and can not claim the protection afforded to purchasers for valuable consideration without notice; although they bought in ignorance of the fact that the purchase-money had not been paid, and although a conveyance had been executed to their vendor, under the order of the court, before the credit payment had become due.

3. *Parties to bill to enforce vendor's lien.*—When a bill is filed by an administrator de bonis non, seeking to subject to sale, in satisfaction of the unpaid purchase-money, lands sold by his predecessor, under a probate decree, for the payment of debts, the heirs at law are necessary parties, in order that the court may convey a good title to the purchaser under its decree.

4. *Sale of lands under decree enforcing vendor's lien.*—Where the purchaser of lands, not having paid the purchase-money, sells and conveys different portions of it, at different times, to several persons, the portion remaining unsold must be first subjected to sale for the unpaid purchase-money, and the other portions in the inverse order of their alienation, the last being first sold.

APPEAL from the Chancery Court of Madison.

Heard before the Hon. R. S. WATKINS.

The bill in this case was filed on the 16th May, 1871, by Morris K. Taylor, as the administrator *de bonis non* of the estate of Hughey Nichols, deceased, against James C. White, John S. Wallace, Thomas J. Humphrey, and John Robinson; and sought to enforce a vendor's lien on a certain tract of land, which had been sold by the complainant's predecessor in the administration of said estate, under a decree of the Probate Court, and bought at that sale by said James C. White, who afterwards sold and conveyed different portions,

at different times, to the other defendants. On final hearing, on pleadings and proof, the chancellor rendered a decree for the complainant, which is now assigned as error, by the defendant Wallace, there having been a summons and severance as to the other defendants. The material facts were thus stated in the opinion of the court, as delivered by

"MANNING, J.—The administrator in chief of Hughey Nichols, deceased, under an order obtained from the Probate Court of Madison county, sold the land in controversy in this cause, to pay debts of the estate. The order authorized the sale to be made upon these terms: that one half of the purchase-money should be paid in cash, and the other half twelve months afterwards. At the sale, made in May, 1869, James C. White became the purchaser, at $1,000, and executed his note for the second installment, at twelve months, but did not pay the cash installment. Instead of this, he gave, and the administrator accepted, his due-bill for $500, on which White subsequently, in the same year, paid $250. In his report of this sale to the Probate Court, the administrator, after stating the terms thereof as above, and who was the purchaser, added, that White had 'complied with the terms of sale,' wherefore petitioner prayed a confirmation of it. The sale was confirmed accordingly, and, in addition, the court ordered the administrator 'to convey to said purchaser all of the right, title, and interest, which said Hughey Nichols, deceased, had in and to said land at the time of his death.' The order was made on the 19th of August, 1869, and the conveyance was executed on the 23d of the same month; though the note reported by the administrator, as taken for the second installment of the price, would not mature until May 17th, 1870. Two days after the conveyance to White, he sold a part of the land so purchased, with other parcels, to Wallace, the appellant, without informing him that the purchase-money had not been paid. The latter had notice, though, that this land was bought of Nichols' estate, and of the report and confirmation of the sale. On the 7th day of September, 1870, White sold another parcel of the land he bought of the estate of Nichols, to Humphrey, one of the defendants below; and on the 24th of February, 1871, still another portion to defendant Robinson. Robinson was informed by White, that he had paid only $250 of the price of the land, to the estate of Nichols.

"The administrator in chief of this estate having died, appellee, Taylor, was appointed administrator *de bonis non*, and filed the bill in this cause, against White, and the several purchasers from him, to assert a lien on all the land sold to them respectively, for the payment of all the purchase-

money still unpaid, both upon the due-bill, and the note for the second installment of the price, and to obtain payment thereof. The chancellor decreed, that all the land be sold for the payment of the balance due of the purchase-money; and from that decree, this appeal is taken."

BEIRNE, HUMES & GORDON, for appellant.—1. The decree should have directed the sale, first, of that portion of the land which remained unsold by White; and if that was not sufficient to discharge the whole debt, should have ordered the other portions to be sold in the inverse order of their alienation by said White.—*Mobile Marine Dock & Mutual Ins. Co. v. Huder*, 35 Ala. 717; *Relfe v. Bibb*, 43 Ala. 519; *Cumming v. Cumming*, 3 Kelly, 460; *Clewes v. Dickinson*, 5 John. Ch. 235.

2. The decree is erroneous, also, in subjecting the lands bought by innocent purchasers to the satisfaction of the asserted vendor's lien. Wallace had made diligent inquiry, and had the title examined by an attorney, who reported it good; and he paid the purchase-money in good faith, without notice of the vendor's lien, and without knowledge of any fact sufficient to charge him with implied notice. His good faith and diligence bring him within the strictest rule ever applied to purchasers. The court had acquired jurisdiction to order the sale; the sale had been made in accordance with its order; had been reported to the court, and by it confirmed; and a conveyance had been executed to White, under its order, which recited that the purchase-money had been paid and secured. The purchasers from White had a right to rely on these recitals, and public policy requires that they should be protected. "If a different rule prevailed," as this court said in *Wyman v. Campbell*, 6 Porter, 238, "purchasers would be timid, and estates consequently be sold at a diminished value, to the prejudice of heirs and creditors." See, also, *King v. Kent's Heirs*, 29 Ala. 542; *Windham v. Windham*, 3 Ch. Rep. 12; *Kitely v. Lamb*, 2 Ch. Rep. 405; *McPherson v. Cunliff*, 11 Serg. & R. 436; *Selin v. Snyder*, 7 Serg. & R. 166; *Town of Canaan v. Greenwood Turnpike Co.*, 1 Conn. 1; *Vorhies v. U. S. Bank*, 2 Peters, 168; *Goforth's Lessee v. Longworth*, 4 Ohio, 129; *Kinsey v. Howard*, 47 Ala. 236; *Scott's Adm'r v. Griggs*, 49 Ala. 186.

WALKER & SHELBY, *contra*. (No brief on file.)

MANNING, J.—[After stating the facts as above] That there was a lien on the land for the payment of the part of the purchase-money for which the note or bond was given, is

clear. The records of the court to which the deed made to White directed the purchasers from him for information in regard to his title, showed that one half of the price he bid for the land was unpaid; and to secure payment of this, the law, which they must be presumed to know, held the land bound. This they were certified of by evidence of the highest kind. How stood the land in relation to the unpaid balance of the amount of the due-bill given for the cash installment? The order of the court for the sale of the land required the administrator to exact of the purchaser payment of one half of the price bid for it, in cash. This was one of the terms of sale, which the administrator reported that the purchaser had complied with. But the report, not being in this particular true, would not, by itself, exonerate the land, in favor of subsequent purchasers of the imperfect title of White, from remaining chargeable with all of the unpaid purchase-money. The title was not in White, nor was it in the administrator, nor had he any power by himself to dispose of it. It was in the heirs of the late Mr. Nichols. What effect, then, would the additional fact have, that the court declares, on its minutes, that it is shown by the administrator's report to it, that one half of the purchase-money has been paid, and the other half sufficiently secured; whereupon it orders, that the sale made by the administrator to the purchaser, White, "be ratified, and in all things confirmed, and said administrator convey to said purchaser all the right, title, and interest, which said Hughey Nichols, deceased, had in and to said land at the time of his death"? Leaving out of view, for the present, the part ordering a conveyance, what is the effect of the confirmation of the sale, following upon the recital that the terms had been complied with?

The section, 2095 of the Revised Code, under which the proceedings were had, is as follows: "Whenever the court is satisfied that the sale was fairly conducted, and the land sold for an amount not greatly disproportionate to its real value, and the purchase-money is sufficiently secured, it must make an order confirming such sale." The substantial thing to be here done, is the confirmation; and it is, in effect, enjoined upon the court that it be satisfied that the terms of sale are properly complied with, before passing its order for that purpose. It is to use care, but may act on the report of the administrator. It does not thereby *adjudicate* that the cash installment has been paid, or that the security for the balance is good. The effect of the confirmation is only a notification to the parties that the court approves the contract, and authorizes them to proceed in the execution of it,

according to its terms. It does not in any manner operate on the title, nor exempt the land from the burden of being chargeable for the payment of the purchase-money. The administrator's report, that he had received payment of one half of the price for which the land was sold, would have the effect, doubtless, of making him and his sureties responsible therefor, in favor of the creditors and distributees of the estate. As to those parties, the due-bill taken from the purchaser may be regarded as evidence, between him and the administrator, that the latter has in the hands of the purchaser a deposit of that sum. But all this does not operate to discharge the land in the possession of the latter, from the payment of the money for which the due-bill was given. That is prevented by the provisions of section 2096 of the Revised Code, which is as follows: "After such confirmation, and when the purchaser has paid the whole of the purchase-money, on his application, or that of the executor, or administrator, the court must order a conveyance to be made to such purchaser, by such executor, or administrator, or such other person as the court may appoint, conveying all right, title, and interest, which the deceased had in such lands at the time of his death." Until he had paid "the whole of the purchase-money," the purchaser could not insist on a conveyance of the legal title to him. The law holds it bound as a security that such payment shall be made. Before that time, he would have only the possession, and an imperfect equity—a right arising out of a contract not yet executed, to demand the conveyance mentioned in the statute, when he had paid all of the price he had bid. And these are all the rights that sub-purchasers from him, ignorant of the facts, would acquire. Against his equity would be the older one of the creditors and distributees of the estate, and of their trustee, the administrator *de bonis non*, that the lands be paid for; in respect to which equity the maxim is, *qui prior est in tempore, potior est in jure.*

It may be supposed, however, that the sub-purchasers in this case bought, besides an equity, the legal title, because the court had ordered a conveyance of the land to White, and a deed of it was thereupon made to him by the former administrator. But the law expressly declares, that the Probate Court should make such an order, only after "the whole of the purchase-money" had been paid; and the record expressly shows that one half of it was not yet due, and that there was a note or bond therefor existing and outstanding. The legal title was not in the court, nor was it in the administrator. It existed in the heirs of Nichols; and the power given to the court to convey it is a special author-

ity, which must be executed in pursuance of the statute granting it. In analogous cases it has been decided, that the administrator's deed, though made in pursuance of an order of the Probate Court, was void.—*Corbitt v. Clenny*, 52 Ala. 480; *Sullens v. Wood*, 44 Ala. 686. And, as the want of power in the court to make the order in this instance was expressly shown in the recitals upon which it was founded, we hold, that the order and the deed were void. White, and the sub-purchasers from him, could not, by proceedings so irregular and unauthorized, obtain the advantage of being clothed with a legal title, to the prejudice of the creditors and distributees, or of the administrator *de bonis non*. Our conclusion is, that the land remains subject to the payment of the entire purchase-money; and that complainant below was entitled to maintain a suit for the sale of it to pay the entire unpaid balance thereof.

But the legal title to the land was in the heirs of the deceased, Nichols. The Chancery Court, in such a case, in the interest of all the parties, will require to be empowered to convey the title complete, both for the purpose of obtaining by the sale the entire value of the property, and of investing the purchaser with a title that will be good both at law and in equity. The heirs of Nichols should have been made parties to the bill.

The decree of the chancellor failed to prescribe the order in which a sale should be made of the several parcels of the land bought by the sub-purchasers from White, defendants in this cause. According to the rule on this subject, any of the land that White might own, should be first sold; then the parcels that were sold by him to others, in the inverse order of such sales. The parcels bought by appellant, Wallace, would, under this rule, be sold last, or so much thereof as might be necessary to pay the balance of the decree of the court then remaining unpaid.—*Mobile Marine Dock Insurance Company v. Huder*, 35 Ala. 717, and cases there referred to.

The decree must be reversed, and the cause remanded.

BRICKELL, C. J., not sitting.