DARCUS, &c.
vs
[CRUMP, &c.

---

## Darcus, &c., free persons of color *vs* Crump, &c.

CHANCERY.

### ERROR TO THE MARION CIRCUIT.

*Case* 74.

### Will. Remainder. Executors. Commissions.

JUDGE BRECK delivered the opinion of the Court.

*April* 15.

Case stated in the bill.

JACOB COX, a man of color, by his last will and testament, devised to his wife, Mary, during her life or widowhood, one third of all his estate, real and personal, and at her death or marriage, to go to his two daughters, Darcus and Charlotte. The other two-thirds of his estate, he directed his executors to sell, and with the proceeds to purchase and manumit his two mentioned daughters, and the residue, if any, to go to them.

The will was admitted to record in the Washington County Court, in 1821, and Daniel Crump, one of the executors therein named, was duly qualified as such. The testator's wife was a slave, and died before he did; his daughters were also both slaves at his death, one living in Virginia, and the other in Tennessee.

The executor sold all the estate, consisting of about one hundred and fifty acres of land, besides personalty.

He purchased, and in 1823, emancipated Charlotte. Darcus was also purchased and emancipated in 1826.

In 1841, the two daughters exhibited their bill against the executor and those who were in possession and claiming the land. They charge the executor with fraud in the sale of the land ; that he sold it at a sacrifice, and was himself, indirectly the purchaser, and as to one third thereof, that he had no authority to make the sale. They also assail a settlement made by the executor with the County Court Commissioners, as unjust and fraudulent. They pray that the land may be decreed them or the value thereof, and also the rents and profits, and for general relief.

Defendant's answer.

Crump virtually admits in his answer, that the land was bid in for him by Glover, the purchaser; but he denies all the allegations of fraud ; insists that the sale was fair, and that the land sold for its full value, and he relies upon a County Court settlement with him as executor, in 1827. The other defendants, who claim the land, deny all the allegations of fraud, and insist that they or their ancestors were purchasers for a valuable consideration, without notice of any illegality or fraud in the sale by the executor, or of any title or equity in the complainants.

Decree of the Circuit Court.

The Court decreed the complainants one third of the land, but subject to a lien in favor of the executor, of $442 63, and the complainants having failed to pay this sum as required, the portion of the land allotted to them, or so much thereof as might be necessary to pay the same, was decreed to be sold. To reverse that decree the complainants have brought the case to this Court. The defendants also complain of the decree and have assigned cross errors.

In the revision of the case the first question we shall notice arises upon the construction of the will, and is made and relied upon by the defendants.

It is contended, as the wife of the testator was a slave and as the complainants were also slaves at his death, the devise to them was void ; that they took nothing under the will, nor did any interest vest in them as heirs, and consequently that their bill should have been dismissed.

The fact that the wife was a slave and died during the life of her husband; the testator, is not material; for the failure or impossibility of the particular estate vesting, would not have destroyed the remainder, but it would have vested, immediately upon the death of the testator, in the complainants, provided they had, at that time, been capable of taking. But as they were slaves, it is conceded, they were at that time, and while they continued slaves, incapable of taking. But we are by no means prepared to sustain the position, that because the estate did not and could not vest while the complainants were slaves, it would not vest upon their manumission. In view of the whole will, it is manifest that it was the intention of the testator the estate should vest in his daughters, when purchased and emancipated as he had directed, and for which he had made, as he supposed, ample provision. The provision for the complainants may, therefore, be regarded as an executory devise, and by which a portion of the testator's estate was to vest and did vest in them as soon as they obtained their freedom. Having thus disposed of this question, we will now examine the questions presented on the part of the complainants.

And first, as to the sale of the whole estate by the executor. It is evident, we think, that under the will the executor had no authority, and could only sell two-thirds of the land. The sale as to an undivided third thereof, which vested in the complainants upon their emancipation, was therefore void, and the Circuit Judge was right in decreeing to them that portion of it, but erred, we think, in subjecting it to sale for the benefit of the executor.

The sum of $442 63, which the complainants were decreed to pay the executor, and upon their failure their portion of the land to be sold, seems to have been reached as a balance, and considered equitably due the executor, by charging him with two-thirds of the proceeds of the land, and also with the personalty, and crediting him with the entire disbursements and charges allowed him in the County Court settlement, and by allowing him interest upon the difference between the disbursements and

DARCUS, &c.
*vs*
CRUMP, &c.

Devise for life to one who is not capable of taking, will not destroy the estate in remainder—it will, in that case, vest immediately on the death of the testator.

A devise to a slave who cannot take whilst a slave, is not therefore void, but will vest so soon as the slave is emancipated, especially when such is the evident design of the testator.

charges and the receipts, and crediting the aggregate with the rents of one-third of the land. In other words, the County Court settlement, which the Court below adopted, charged the executor with the proceeds of the whole land and left a balance in his hands in favor of the devisees, of $5 70. Now by charging him with only two-thirds of the proceeds, there would have been a balance in his favor of one-third the proceeds of the land, less $5 70, or $397 63. This sum with interest, less one-third the rents, makes the $442 63, which complainants were decreed to pay the executor. We should have no hesitation in deciding that the executor was entitled to this sum, and to a lien upon the complainants' portion of the land for its payment, provided his conduct in making sale of the land had been fair and free from fraud, and that improper charges had not been allowed him in the County Court settlement. But we think the testimony conclusive, that the sale of the land was fraudulent, and that some of the charges allowed in the County Court settlement, were improper and exorbitant.

The testator died in 1821. The precise time when the executor made sale of all the estate does not appear, nor is it very material to determine. The sale of the land and personalty was at same time, and in 1821 or 1822.

An executor, in general, may not purchase land devised to be sold, but such sale will not be sanctioned when there are circumstances indicating unfairness in the sale.

The terms upon which the land sold, was one half in hand and the residue in twelve months, payable in specie. The sale was made at an unusually early hour in the day, and before the sale of the personalty, or when only a few trifling articles had been sold. But few people had arrived when the land was sold; many persons came shortly afterwards, and expressed a desire to have bid for it; some offered more than it had been sold for—complained of the sale as unfair, and that the land had not been sold for its value. The whole tract sold for $1,210; was purchased in by Glover for the executor. When complaints were made that the sale had been made at too early an hour, and an anxiety expressed by several to bid for it, and more in fact, offered than it had sold for, the executor, as he was in effect himself the purchaser, should and would, had he been disposed to act fairly and honestly, have immediately put up the land and re-

sold it. But the very terms of the sale are calculated to excite suspicion and justify, to some extent, a presumption of fraud. The sale was made at a period when the currency of the country was greatly depreciated bank paper; when specie was scarce, and collected in any considerable amount with difficulty. The sale, as we have seen, was for specie, and one half of the purchase money to be paid down. This gave the executor, if disposed to become the purchaser, a signal advantage over others, who might be desirous of purchasing.

But notwithstanding all the circumstances attending the sale, and that the land was purchased for the executor, which alone upon the general principle, would render it void, we should not be inclined, as to two-thirds thereof, to disturb it, nor to rely upon it as a reason for withholding the relief granted him by the decree, provided a full and fair price had been paid for it. The proceeds were applied in procuring the freedom of the complainants, which they accepted and are now enjoying. But we are fully convinced, in view of all the testimony, it sold for less than its value, and less than it would have commanded, had it been fairly and properly exposed to sale. The weight of the testimony is, that it was worth from three to five hundred dollars more than the executor paid for it. The land was conveyed by the executor to Glover, the nominal purchaser, who paid nothing for it, but subsequently conveyed it to the executor, who sold and conveyed it to those whose representatives are now in possession.

If we look into the County Court settlement, we find the executor allowed two hundred and sixteen dollars in specie, for his services in effecting the emancipation of the complainants, also one hundred and twenty dollars commissions for the sale of the land, besides an allowance of thirty six dollars for commissions, as we understand it, upon the personalty. The first item, in view of all the circumstances and the testimony, seems to us unreasonable; the second, considering the character of the sale, wholly unauthorized. How long the funds remained in the executor's hands, before disbursed in the purchase of the complainants, does not appear; one was

*It is erroneous to allow a commission on sale of lands by an executor, when he himself becomes the purchaser.*

emancipated in 1823 and the other in 1826. If not pur-chased till the time of emancipation, funds must have remained a considerable time in his hands, and for the use of which no account is rendered or charge made.

The complainants charge that considerable sums were due the testator at his death. upon note and account. The executor accounts for nothing upon that score, and his answer to the express allegation in complainants' bill upon the subject, is equivocal and unsatisfactory.

Upon the whole case we have no difficulty in coming to the conclusion that the decree is erroneous in award-ing to the executor any thing against the complainants. Our only doubt is, whether the complainants are not en-titled to a decree for rents. But as there is some conflic-tion in the testimony as to the value of this land at the time of the sale, and as it may be estimated too high, we are finally of opinion that the rents should be inclu-ded in the estimate in determining that the executor has realized out of the estate, irrespective of one-third of the proceeds of the sale of the land, all his disbursements and a reasonable sum for his services; and that the land already allotted to the complainants should alone be de-creed them.

Wherefore, the decree is reversed and the cause re manded, that a decree may be rendered as herein indi-cated.

*Shuck* for plaintiffs: *Harlan & Craddock* for defen-dants.