## Spurlock, et al. v. Spurlock, et al.

(Decided November 24, 1914.)

### Appeal from Floyd Circuit Court.

1. Executors and Administrators—Sales Under Order of Court—Purchase by Executor or Administrator.—Where an executor or administrator purchases the property of his decedent, equity will, upon seasonable application, either set aside the sale or declare the purchase a trust for the benefit of those interested in the estate; and it is immaterial whether the purchase is made directly, or indirectly through the medium of an agent.

2. Executors and Administrators—Sales Under Order of Court—Purchase by Executor or Administrator—Voidable.—The purchase by an administrator or executor of the property of his decedent is not void, but voidable at the option of persons interested in the estate.

3. Executors and Administrators—Sales Under Order of Court—Purchase by Executor or Administrator—Ratification—Laches.—The right to have a sale to an executor or administrator of his decedent's property set aside or adjudged a trust must be exercised within a reasonable time after the irregular purchase has become known to the person seeking its avoidance, acquiescence in the sale for a long time will create a presumption of ratification.

4. Tenancy—Joint Tenancy—Purchase of Adverse or Outstanding Title—Mutual Rights and Liabilities.—A joint tenant cannot purchase or otherwise acquire for his own benefit an outstanding title or encumbrance against the joint estate; but such sale will inure to the joint benefit of him and his co-tenants, provided the other tenants elect within a reasonable time to avail themselves of such adverse title and contribute their ratable share of the expense of acquiring it.

5. Executors and Administrators—Joint Tenant—Purchase by—Trust—Laches.—Where property of a decedent is purchased by the administrator, who is also a joint tenant with the other heirs, failure on the part of the other heirs for a period of over ten years to attack the sale or to contribute their ratable share of the expense of acquiring it, will defeat their right to have the sale set aside or adjudged a trust in their favor.

6. Deeds—Commissioners' Deeds—Failure to Recite Names of Par-

ties—Title.—A commissioner's deed, even though it fails to recite the names of the parties to the proceeding, passes the title of all the parties to the action, as shown by the record.

JAMES GOBLE for appellants.

SMITH & COMBS for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

There is involved on this appeal the title to an undivided one-eighth of a survey made in the name of Elijah Canada for 150 acres of land on Spurlock or Patton Fork of Left Beaver Creek in Floyd county. The question arises in the following way: John Spurlock owned the Elijah Canada survey. He sold it, together with the adjoining land, to his brother, H. K. Spurlock, and executed a deed to him. H. K. Spurlock and two of his sons, B. M. Spurlock and John H. Spurlock, executed two notes for the purchase price, one for $300 and one for $700. John Spurlock died in the year 1891. M. T. Allen, Sheriff of Floyd county, and public administrator, brought suit in the Floyd Circuit Court against his heirs and creditors to settle the estate. The only estate left by John Spurlock was the purchase money lien for $1,000 on the land which he had sold to his brother, H. K. Spurlock. The petition charged that only a part of this debt had been paid. While the suit was pending, H. K. Spurlock died in the year 1894. During the same year, his son, William, was appointed his administrator. The suit was revived against the eight children of H. K. Spurlock in 1895. On February 22, 1896, the heirs of H. K. Spurlock filed a joint answer admitting the purchase money lien, and that only a part of it had been paid, and consenting to a sale of the tract of land described in the amended petition, or of so much thereof as might be necessary to pay the claims which had been allowed against the estate of John Spurlock, deceased. The land described in the amended petition is only a part of the land covered by the purchase money lien. The debts allowed by the commissioner, together with the costs of the action, amounted to $474.50. Judgment was entered at the February term, 1896, directing a sale of so much of the land described in the amended petition as was necessary to pay this sum. The sale took place on May 4, 1896. James Goble became the purchaser at the price of $474.50, and executed bonds

for the purchase price, with H. H. Fitzpatrick as a surety. The sale was afterwards reported and confirmed. On June 12, 1897, James Goble, the purchaser, assigned his bid to William Spurlock, under an agreement containing the following recital:

"Whereas, it was an agreement between me and said William Spurlock that if he caused the said purchase money to be paid that the bid and sale should be transferred to him, I now assign, transfer and set over to said William Spurlock all the interest; right and title I have acquired in said land by the purchase of it at said sale; and I hereby request the court to have the deed made to said land to said William Spurlock."

On June 18, 1897, the master commissioner was directed to produce, and did produce and acknowledge, a deed conveying the land in controversy to William Spurlock. The deed was examined and approved and endorsed by the circuit judge. By mistake or oversight the deed was made by the master commissioner on behalf of the creditors intsead of the heirs of H. K. Spurlock.

Burrell Spurlock died in the year 1907, and William Spurlock in the year 1909. During the years 1909 and 1910, John H. Spurlock and R. J. Spurlock purchased and procured deeds from their living brothers and sisters for their interest in the land in controversy, and the adjoining land. The children of Burrell Spurlock being infants, they were unable to acquire their interest. Thereupon they brought this action against the children of Burrell Spurlock to quiet their title to the undivided one-eighth interest in the Canada survey, basing their right of recovery on the above proceedings. The defendants defended on the ground that William Spurlock was the real purchaser at the commissioner's sale, and being a joint tenant with Burrell Spurlock and his other brothers and sisters, and also the administrator of the estate of H. K. Spurlock, his purchase inured to the benefit of the heirs of H. K. Spurlock; that all that he could claim was a lien for the purchase money which had been repaid to him by the rents received and timber cut from the land. The chancellor sustained the contention of the defendants and entered judgment accordingly. Plaintiffs appeal.

In addition to the foregoing facts, it appears that James Goble, the original purchaser, had been an attorney for H. K. Spurlock, and for his services in certain litigation had been adjudged a fee of $75 and a lien on the land in controversy. The judgment directing a sale

of the land in controversy provided that it should be sold subject to Goble's lien. Burrell Spurlock, through whom the defendants in this action claim, lived for about eleven years after the sale took place, and ten years after the deed was directed to be made. William Spurlock, to whom Goble's bid was assigned, and to whom the deed was made, died intestate and without children. His mother was his only heir. She sold and conveyed her interest in the land to plaintiffs, John H. and R. J. Spurlock.

It is true that equity does not look with favor upon the purchase by an executor or administrator of the property of his decedent, and upon seasonable application will either set aside such sale or declare the purchase a trust for the benefit of those interested in the estate. In the application of this rule it is immaterial whether the administrator purchased directly or indirectly through the medium of an agent or third person, who purchases ostensibly for himself, but really for the executor or administrator. 18 Cyc., 770; Woodard v. Jaggers, 48 Ark., 248, 2. S. W., 851.

It is also the rule that such a purchase is not void, but merely voidable at the election of the persons interested. Fielder v. Childs, 73 Ala., 567; Burris v. Kennedy, 108 Cal., 331, 41 Pac., 458. However, the right to have the sale set aside or adjudged a trust must be exercised within a reasonable time after the irregular purchase has become known to the person seeking its avoidance, as acquiescence in the sale for a long time will create a presumption of ratification. Thus, in Johnson, &c., v. Poff, 109 Ky., 396, 22 Ky. L. R., 950, 59 S. W., 325, the administrator purchased his intestate's land, at a sale made in a suit brought by him to settle the estate. At the time of the sale the children of the intestate were infants. Suit to have the purchase declared a trust was not brought until 30 years after the sale was made, and until 13 years after the youngest child had arrived at age. It was held that the application of the children to have the purchase by the administrator adjudged a constructive trust in their favor was not made with reasonable diligence, and their petition was dismissed. The same doctrine was followed and applied in the case of McGary's Heirs v. McGary, 32 Ky. L. R., 315, 105 S. W., 891. The rule is founded on the theory of assent, and the assent may be either express or implied. It is often implied from the circumstances, one of the strong-

est of which is the failure of those interested within a reasonable time to take steps to have the sale set aside or declared a trust in their favor. Scott v. Freeland, 7 Smedes & M. (Miss.), 409, 45 Am. Dec., 310.

It is also well settled in law that one joint tenant cannot purchase or otherwise acquire for his own benefit an outstanding title or encumbrance against the joint estate; but such sale will inure to the joint benefit of him and his co-tenants, provided the other tenants elect within a reasonable time to avail themselves of such adverse title and contribute their ratable share of the expense of acquiring it. 23 Cyc., 492, Sneed v. Atherton, 6 Dana, 276, 32 Am. Dec., 70. The rule applicable to such a case is well stated in Freeman on Co-tenancy & Partition, Sec. 156.

"The right of a co-tenant to share in the benefit of a purchase of an outstanding claim is always dependent on his having within a reasonable time elected to bear his portion of the expense necessarily incurred in the acquisition of the claim. A most natural and material inquiry, then, is, What is a reasonable time? To this inquiry no positive answer can be given. In this, as in all other questions in regard to reasonable time, no doubt each case must necessarily be determined upon its own peculiar circumstances. The co-tenant, asking a court of equity to award him the benefit of a purchase, must show reasonable diligence in making his election. Whatever delay he may have occasioned must be entirely consistent with perfect fair dealing on his part, and in no wise attributable to an effort to retain the advantages while he shirks the responsibilities of the new acquisition."

Indeed, as is pointed out in the editorial note to Stevenson v. Boyd, 19 L. R. A. (N. S.), 525, the doctrine that a co-tenant may, by delay, lose the right to benefit by the purchase of an outstanding title by his fellow-owner, is well established. Thus, in Savage v. Bradley, 149 Ala., 169, 123 Am. St. Rep., 30, 43 Southern, 20, is was held that, under ordinary circumstances, two years was a reasonable time within which a co-tenant might elect to contribute to the purchase of an outstanding title made by another co-tenant, and where there was no attempt to exercise this right for nearly 10 years after the redemption of the property from the mortgage sale by his co-tenant, his right to benefit by the purchase was lost by laches. In Smith v. Washington, 11 Mo. App., 519, a

delay of three and one-half years was held fatal. In Coke v. Balkin, 73 Hun., 145, 25 N. Y. Supp., 1038, a recovery was denied after the lapse of 12 years. The same rule was applied in this State in the case of Francis v. Million, 26 R., 42, 80 S. W., 486, where there was a delay of 13 years.

Since the right of heirs to set aside a sale to an administrator or executor or to have the purchase declared a trust in their favor, and also the right of co-tenants to participate in a purchase by one of their number, may be lost by their failure to take proper steps within a reasonable time, the question is: Did Burrell Spurlock and his children waive their rights in this case? Burrell Spurlock was a party to the action brought for the purpose of selling the land in controversy. The land descended to him and his brothers subject to the payment of the lien debt. He knew of the purchase by his brother. He was of age and lived for 10 years after the purchase was made. There is no evidence in the record that he ever asserted any interest in the land after the purchase was made. Not only so, but he never took any steps to have the sale set aside or to have the purchase adjudged a trust in his favor. He died in the year 1907. Almost five years thereafter had elapsed before this action was brought. Not until then was there ever any claim that the purchase by William Spurlock inured to the benefit of Burrell or the defendants. In the meantime, the land descended, on the death of William, to his mother. His mother conveyed it to plaintiffs. Under these circumstances, we conclude that the application of defendants comes too late, and that they have lost their right to benefit by the purchase, by reason of the failure of their father to take steps within a reasonable time to have the purchase declared a trust in his favor.

Under the rule laid down in Sears v. Colley, 148 Ky., 445, a commissioner's deed, even though it fails to recite the names of the parties to the proceeding, passes the title of all parties to the action, as shown by the record. As it is conclusively shown that Burrell Spurlock was a party to the action, it necessarily follows that his title to the land in controversy passed to the purchaser, William Spurlock. As plaintiffs have since acquired the title of William Spurlock, it follows that they are entitled to have their title quieted.

It appears from the record that the Canada patent is only a portion of the land sold by John Spurlock to

H. K. Spurlock. There is a dispute as to the proper location of the Canada patent, and as to the quantity of the land it covers. There is no reason why this question should not be settled in the present action. On a return of the case, the chancellor will hear evidence on the question, and, after locating the Canada patent and describing the exact boundary of land which it covers, he will enter judgment quieting plaintiffs' title thereto.

Judgement reversed and cause remanded for proceedings consistent with this opinion.