### Naylor v. Thomas, Trustee, Etc.

(Decided February 22, 1921).

## Appeal from Fulton Circuit Court.

1. Executors and Administrators—Purchaser of Property at Own Sale.—It is well established as a general rule that an executor or administrator can not become the purchaser at his own sale of the property of his decedent. The rule precludes the representative not only from purchasing outright, whether for himself or as agent for another, but also from being interested in a purchase at a sale by him made by another for him. And the rule applies whether the sale be by judicial decree or under a power of sale conferred upon the fiduciary by a will or other instrument of writing.

2. Executors and Administrators—Purchase of Property at Own Sale.—The reason supporting the rule is, that to permit the fiduciary having the control and power to dispose of the trust property to purchase it from himself, would allow him to create in himself an interest opposite to that of the party or parties for whom he acts, and also a conflict between the self interest and integrity of the fiduciary, thereby furnishing both motive and opportunity for his profiting upon his relations to the property as a trustee to the disadvantage or loss of those it is his duty to protect.

3. Executors and Administrators—Purchase at Own Sale.—This rule applies, not only to sales at which the executor or administrator becomes the purchaser of his decedent's property, but likewise to all sales of such property where the purchaser, though having no connection therewith as a fiduciary, is charged with the performance of a duty with reference thereto which is inconsistent with the character of purchaser.

4. Executors and Administrators—Purchase of Property at Own Sale.—A purchaser of property of his decedent's estate by an executor or administrator, at his own sale thereof, unless tainted with actual fraud, will not be declared void, but merely voidable at the option of those interested in the estate, upon whose application, if seasonably made, a court of equity will either set aside the sale or declare the purchase a trust for the benefit of all to whom the estate should go.

5. Executors and Administrators—Purchase of Property at Own Sale.—As in this case the purchase of a farm by the executor at a decretal sale made by him of his testator's real estate, though reported to the court as having been made as agent for his (the executor's) wife, came within the inhibition of the rule, supra, the action of the chancellor in sustaining the exceptions filed by certain of the parties in interest to the report of sale and setting the sale aside, was not error.

HERCHEL T. SMITH for appellant.

BEN T. DAVIS for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

Joshua Naylor, a resident of Fulton county, died in the year 1912, testate, survived by five children and leaving, besides some personal property, certain real estate consisting of two lots in the city of Hickman and a farm of 205 acres in Fulton county. His will was admitted to probate by the Fulton county court and his sons, J. W. Naylor and Lon Naylor, therein appointed executors without security, duly qualified in that court as such. The will devised the testator's real and personal estate, after the payment of his debts, equally to his children and the children of such of them as might not be living at the time of his (the testator's) death, but provided that the executors should within five years after the testator's death sell all the real estate and divide the proceeds equally among his children, charging each with such advancements as may have been received from him; and that until sold by the executors, the whole of the real estate should be rented out by them.

Lon Naylor died intestate after qualifying as an executor of his father's will, survived by his wife, Clara Naylor, and two infant children, Dorothy Naylor and Lon LaRue Naylor, of each of whom the mother became and is the duly appointed, qualified and acting statutory guardian. Since the death of Lon Naylor, J. W. Naylor as surviving executor of Joshua Naylor's will has had sole charge of the latter's estate, and this action was brought by him as such executor against the devisees under the will and certain creditors of the testator to obtain a sale of the lands, distribution of the proceeds and settlement of the estate.

As the will of the testator empowered the executor to privately sell the real estate, in the absence from the record of the pleadings in the case, which seem to have been omitted by agreement of the parties, we are unadvised of his reason for applying to a court of equity for authority to do so, but will assume that it was because he desired the additional authority from the court, or that it was demanded by the devisees or some of them. At any rate such authority was given by the judgment rendered by the circuit court, which prescribed the terms of the sale and directed the surviving executor to make it for the purpose of distributing the proceeds among the devisees as contemplated by the will, but to do so at public auction and after due advertisement. Manifestly, the fact that the sale was authorized by the judgment of the court as well as by the will, can not affect its validity, in the absence of a complaint and showing that the property would have brought a greater amount of money had it privately been sold by the executor in literal compliance with the direction of the will. Not only is there no such complaint in the case, but on the contrary the record shows that the parties were in full accord as to the purposes of the action and all proceedings had and taken therein prior to the entering of the judgment, and that the judgment itself was an agreed one. As will presently be seen the controversy between the parties now contending arose at and following the sale of the devised real estate, all of which was sold by the executor as directed by the judgment of the circuit court, his report thereof, later filed in that court, reciting that the two city lots were purchased by Clara Naylor, widow of Lon Naylor, at the price of $1,200.00, and the

farm of 205 acres by Nora V. Naylor, wife of the execu-
tor, J. W. Naylor, at the price of $10,000.00. As no ex-
ceptions were filed to the report respecting the sale of the
city lots, the sale thereof was duly confirmed by an order
of the court. But the infants, Dorothy and Lon L. Nay-
lor, in their own right and by their statutory guardian,
Clara Naylor, and the latter as such guardian and in her
own behalf as widow of Lon Naylor, filed exceptions to so
much of the report of sale as set forth the purchase of the
farm of 205 acres by the executor's wife, Nora V. Naylor,
which attacked the validity of its sale to her, objected to
its confirmation by the court and asked that it be set aside
and the farm again sold.

The circuit court after hearing evidence on the issues
of fact made by the exceptions respecting the sale of
the farm, sustained the exceptions thereto, set aside the
sale and ordered a resale thereof by the executor. From
the judgment evidencing these rulings both the executor,
J. W. Naylor, and Nora V. Naylor have appealed.

The objections raised by the appellee's exceptions to
the sale of the farm are: (1) That the executor's pur-
chase of it from himself, whether made for himself or as
agent for his wife, was contrary to law, because violative
of the trust arising out of the relation sustained by him
as a fiduciary to the property sold and the persons among
whom its proceeds are to be distributed. (2) That the
land was sold at a grossly inadequate price. It is not per-
ceived that an executor can exercise any right or power,
not conferred upon him as a fiduciary by the will, that is
not permitted by law of any other trustee of an express
trust; and of such trusts it is said:

"One of the most familiar doctrines of the law of
trusts is that a trustee can not purchase from himself or
at his own sale. The law does not stop to inquire into the
fairness of the sale or the adequacy of the price, but
stamps its disapproval upon a transaction which creates
a conflict between the self interest and integrity of the
trustee. The rule embraces not only direct purchases but
also indirect purchases through third persons, and ap-
plies regardless of whether the sale is private or under
decree, or whether the *cestui que trust* is an infant or
adult, and even though the purchaser is only one of sever-
al co-trustees, or is acting as agent for a third person.
. . . " 39 Cyc. 366-367.

The applicability of the above doctrine to executors and administrators is thus stated in 18 Cyc. 326-7:

"It is well established as a general rule that an executor or administrator can not become the purchaser at his own sale of the property of his decedent. Neither can one executor or administrator lawfully become the purchaser at a sale made by his co-executors or co-administrators. The rule precludes the representative not only from purchasing outright but also from being interested in any purchase at a sale by him, neither is it confined in its application to a direct purchase, but an indirect purchase by means of an agent or a third person who is the ostensible purchaser, but who really acts for the representative in order to enable him to acquire title, may also be avoided."

This rule has uniformly, and even strictly, been applied by this court, not only as to sales at which the executor or administrator became the purchaser for himself of his decedent's property, but likewise to all sales of such property where the purchaser, though having no connection therewith as a fiduciary, is charged with the performance of a duty with reference thereto which is inconsistent with the character of purchaser. And this is true whether the sale be by judicial decree or made under a power of sale. Darcus v. Crump, 6 B. Mon. 363; Faucett v. Faucett, 1 Bush 511; Price's Adm'r v. Thompson, 84 Ky. 219; Conrad v. Conrad, 152 Ky. 422; Spurlock v. Spurlock, 161 Ky. 248; Penn v. Rhoades, 124 Ky. 798; Bagby v. Eversole, 6 R. 365; Sears v. Collie, 148 Ky. 444; Baker v. Weeks, 178 Ky. 520; Jones v. Deposit and Peoples Bank, 180 Ky. 395.

The reasons supporting the rule, *supra,* had they not already been stated, are self evident. Concretely set forth they are: That to permit an executor, trustee or other fiduciary having in charge trust property, to purchase it from himself, would allow him to create in himself an interest opposite to that of the party or parties for whom he acts, and at the same time a conflict between the self interest and integrity of the fiduciary, thereby furnishing both motive and opportunity for his profiting from his relations to the property as a trustee, at the expense of those it is his duty to protect.

In some jurisdictions certain limitations of the rule, *supra,* have been recognized, as where the executor or

administrator making the purchase at his own sale has a personal interest in the property sold. Julian v. Reynolds, 8 Ala. 680; McLane v. Spence, 6 Ala. 894; Michord v. Girad, 4 Howard (265) 503; or where the sale was a fair one and a fair price was given for the property. Brannon v. Oliver, 2 Stew (Ala.) 47; McKey v. Young, 4 Hen and M. (Va.) 430; Toler v. Toler, 2 Patt & H. (Va.) 71. But according to the weight of authority courts generally give little recognition to such limitations, and we have been referred to no case in this jurisdiction upholding such a limitation of the rule as either of those mentioned. Certainly the first should not prevail if, notwithstanding the fiduciary's interest in the property, his purchase thereof would result to the disadvantage and injury of others having an interest in the property; and whether this court would or not consider the applicability of either of such limitations could only arise in a case in which there was a conclusive showing by proof, not only of the utmost good faith on the part of the fiduciary making the purchase and an entire absence of fraud in the sale, but also that the price or amount paid by the latter for the property equaled its highest market value and that to set aside the sale would necessarily cause serious and irreparable loss to the devisees or heirs, or some of them, entitled to share in the proceeds of sale.

Cases decided by this court may be found, however, which hold that acquiescence in the sale by the devisees or heirs for a long time will create a presumption of ratification or be held to constitute such laches as would estop a belated attack upon it. Johnson v. Poff, 109 Ky. 396; Spurlock v. Spurlock, 161 Ky. 248. This is so because a purchase by an executor or administrator at his own sale is usually held to be not void, as would be the case if the transaction were tainted with actual fraud, but merely voidable at the option of those interested, therefore the right to attack the sale must be exercised within a reasonable time. In Johnson v. Poff, *supra,* the attack upon the sale complained of was made thirty years after the sale occurred, and in Spurlock v. Spurlock, *supra,* fifteen years after the sale and more than five years after the youngest of the litigants, who were infants at the time of the sale, became twenty-one years of age; hence, in each of those cases it was held that the attack upon the sale came too late. In the instant case, however, the sale complained of was attacked by appellees with the greatest

speed practicable by the proper filing of exceptions to the report thereof as made by the executor, which present fully all questions of law and fact by which the validity or invalidity of the sale must be determined.

It appears from the evidence heard on the exceptions that the appellant, J. W. Naylor, although appointed by the judgment of the circuit court to do so in his executorial capacity, did not himself make the sale of all the real estate it directed to be sold, but only cried the sale of the two city lots, after which he suggested to appellees that they agree upon another person present to act as autioneer in selling the farm, to which they assented, and the sale thereof was made by the person so agreed upon, at which the appellant, J. W. Naylor, was a bidder. Two bids were made on the farm by others followed by his bid, which was the third and last bid and the only one made by him; thereupon the farm was knocked down to him at $10,000.00, the amount of his bid. Whether the fact that he was a known devisee of his father's will and by reason thereof a part owner of the land and entitled to share in the proceeds thereof, caused the two previous bidders and other persons present to favor him by refraining from bidding against him after his bid was made, does not appear from the evidence, but all the circumstances attending his purchase of the land should be considered in passing on the validity of the sale.

Certain facts of greater import than the circumstance just mentioned, are also to be considered. One of these facts appearing from the evidence is, that neither at the time of making his bid nor when the farm was knocked down to him, did the appellant, J. W. Naylor, announce that he was not bidding for himself or that he was bidding for his wife; nor was there any announcement from the acting auctioneer when, before or after he accepted the bid of J. W. Naylor and declared him the purchaser of the farm, that the purchase was made by the latter for his wife. Another significant fact tending to discredit the claim of J. W. Naylor that his purchase of the farm was made for his wife, is furnished by the sale bond filed with his report of the sale, which was taken by him for the purchase price of the farm as fixed by his bid, and in and to which, notwithstanding the statement of the report of sale that he caused it to be executed by the wife, her name does not appear. On the contrary, the bond was signed by him, not as an agent for his wife, but as the principal

obligor, and below it is the name of his surety. The bond, therefore, is one executed by himself and surety and made payable to himself as executor. That it was so executed and yet so appears, gives strong support to the contention of appellees that the farm in question was purchased by Naylor for himself and the sale bond for that reason executed in the manner stated, but that upon his later discovering or being advised of the probability of objection to the sale and of its being set aside because of the purchase of the land by him, he concluded, as a possible means of avoiding such a result, to report the sale to the court as having been made to his wife.

Laying aside consideration of the question whether an obligation expressed in such terms and executed as was the sale bond referred to, is enforcible against the obligors, we are constrained to hold, as did the circuit court, that the sale of the farm in question was and is voidable, whether its purchase by the appellant, J. W. Naylor, was made for his wife or himself, as the facts and circumstances attending the sale are of such character as to cause grave doubt of the good faith of the executor and lead to strong suspicion that his executorial relation to the property sold and parties affected by the sale, was improperly used to his advantage and the latter's disadvantage.

If the appellant's purchase of the land for himself was forbidden by law because of his fiducial relations with the property and parties, he was equally without right to purchase it as the agent of another; and especially does the law declare this to be so where the person for whom he acts as agent in making the purchase is a near relative and by reason thereof in a position to be unduly favored by him. 18 Cyc. 330; Scott v. Gamble, 9 N. J. Eq. 218; Schaefer's Estate, 10 Pa. Co. Ct. 100. Manifestly a wife is not only to be classed as a near relative of and likely to be unduly favored by the husband, but naturally the person whom he would select above all others to hold for his benefit the title to property which the law would not permit him to hold in his own name.

The evidence regarding the market value of the farm introduced on the trial of the issues made by the exceptions to the report of sale, is unusually conflicting, that of the eight or more witnesses for the appellees conducing to show that the farm is worth from $2,000.00 to $3,000.00 more than the accepted bid of the executor, and

that of an equal number of witnesses for appellants being to the effect that it brought at the sale its full market value. It will at once be seen that the market value of the land is left in doubt by the proof, which fortifies our conclusion that the sale should be set aside on the ground that its purchase by the executor was forbidden by law. For as equity does not look with favor upon the purchase by an executor or administrator, whether for himself or another, of the property of his decedent, it, upon seasonable application, will either set aside such sale or declare the purchase a trust for the benefit of those interested in the estate; and as such application was seasonably made by appellees in this case and they elected to move to set aside the sale, the relief sought was properly granted by the chancellor.

Wherefore the judgment is affirmed.