## Cortes Layne, et al. v. Moses S. Layne, et al.

(Decided June 5, 1923.)

### Appeal from Floyd Circuit Court.

1. Appeal and Error—Absence from Record of Map Necessary to Understand Testimony Raises Presumption Against Appellants.—Where there was not sufficient similarity in the boundaries of the various deeds to locate the different tracts involved, without reference to a map which was not in the record, the presumption on appeal is against the appellants, who failed to put the map in the record.

2. Tenancy in Common Cotenants Must Reimburse Tenants Purchasing Outstanding Title Within Reasonable Time to Claim Share in Purchase.—If one cotenant purchases an outstanding title to the property, which in equity would inure to the benefit of the cotenants, the other cannot claim that benefit, unless within a reasonable time they offer ratably to indemnify the purchaser for the purchase price.

3. Adverse Possession—Evidence Held to Sustain Finding Cotenant's Possession was Adverse.—Evidence held to sustain a finding by the chancellor that the possession of premises by one cotenant after she had purchased outstanding title at execution sales was adverse to her cotenants, so as to bar their right to claim the purchases inured to their benefit.

4. Appeal and Error—Chancellor's Finding Entitled to Some Weight Where Facts Confused.—Where the facts were confused because of the numerous deeds involving different descriptions, the findings of the chancellor, who was acquainted with the parties and the witnesses, and familiar with the general situation, are entitled to some weight.

JOSEPH D. HARKINS and HARKINS & HARKINS for appellants.

O'REAR, FOWLER & WALLACE and A. J. MAY for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

Harry Stratton conveyed a tract of land in Floyd county, Ky., to Lindsey Layne in November, 1849. By a second deed dated July 15, 1856, the same grantor conveyed the same land to the same grantee, including a second boundary therein, and retained a lien on all to secure the unpaid purchase money. This land lay on the Big Sandy river on both sides of Tom's creek.

On the 3rd day of February, 1860, Lindsey Layne, by title bond, sold and contracted to convey all of the land

above Tom's creek to his two sons, M. S. and W. H. Layne. The purchase price not being paid, suit was filed by Stratton's administrator, and judgment recovered against Lindsey Layne in the year 1865, and an execution was levied on the entire body of land.

The land below the mouth of Tom's creek was sold to satisfy the Stratton judgment, and purchased by M. S. Layne and deed executed to him by J. M. Davidson, sheriff, on the 9th day of August, 1865.

The lands above the mouth of Tom's creek were sold under the Hatcher execution and purchased by him on the 9th day of November, 1868, at the price of $917.94. This was less than two-thirds of its appraised value, and during the exemption period Lindsey Layne paid thereon the sum of $531.00 and secured an extension of the other indebtedness, but it does not appear how this was done.

Hatcher assigned $500.00 of his debt to Hare and Sides, and this not being paid, on the 29th day of March, 1880, the three brought suit for the enforcement of their lien. It appears that Lindsey Layne, while admitting the debt, denied the existence of a lien, and for the first time W. H. and M. S. Layne presented their title bond. This was set up as a defense to the action. However, they later withdrew their answer and judgment was rendered for Hatcher, et al.

On the 11th day of August, 1884, the land was sold for the sum of $1,442.91. The purchaser was A. J. Stratton, with W. H. and M. S. Lane as sureties on the bonds in which a lien was retained on the land.

As to how much, if any, was paid on these bonds does not appear, but later Hatcher brought suit and judgment was rendered against the parties, and for an enforcement of the lien; in June, 1888, the land was sold at decretal sale and purchased by H. H. Fitzpatrick as attorney of Hatcher for his debt, and no bond was required.

The land brought less than two-thirds of its appraised value and before the twelve months for redemption expired the amount of the debt was paid by Syrena Layne, wife of M. S. Layne, and an assignment of his bid taken.

No further action was taken as to the title to this tract until October, 1912, when the ex-sheriff, who was in office at the time of the sale, made a deed to the land to the children of Syrena Layne, she having died in the meantime.

It further appears that in 1888 a judgment was rendered in favor of one Stephen Loar against Lindsey

Layne, W. H. Layne and M. S. Layne, and another in favor of Duncan & Elder against Lindsey and M. S. Layne; executions issued thereon and were levied on the boundary below the mouth of Tom's creek as the lands of M. S. Layne.

At execution sale Loar bid the land in at the amount of his debt, which was less than two-thirds of its appraised value, and the equity of redemption was sold and purchased by Duncan, Ford and Elder at the amount of their debt, whereupon they paid the Loar debt and took an assignment of his bid and deed was made to them on the 21st of January, 1881. Later they sold this to W. H. Layne for $750.00 This was secured by a lien on the land, and it not being paid they sued him on the lien debt and on another note for $100.00, and on April 27, 1888, secured judgment against him and for a sale of the land. It was sold and purchased by Syrena Layne, to whom J. M. Weddington as master commissioner made a deed on the 19th of July, 1888.

It is further indicated that fifteen acres above Tom's creek were sold at sheriff's sale on the 15th of March, 1888, and purchased by Mrs. Syrena Layne. Aside from this there is a small tract of about thirty acres of land below the mouth of Tom's creek upon which M. S. Layne now lives, and which does not seem to have been sold under execution except at the first sale, at which he became the purchaser. There is one other and possibly two small boundaries that were not sold under execution, unless those under the first Stratton and Hatcher judgment. We are unable to trace these transactions accurately or to locate the different tracts with exactness as the evidence is confused and the different boundaries located by reference to a map which was not filed in the record. Further, it seems that M. S. and W. H. Layne were closely associated with each other in business; that in addition to the lands herein described their father conveyed them jointly six-sevenths of another tract of land on the other side of Big Sandy river known as the Mead farm upon which W. H. Layne lived until his death in the year 1900.

In 1916 this suit was filed against M. S. Layne by the heirs of W. H. Layne, setting up the title bond and alleging that the two brothers were the joint owners of both farms, and seeking a division, or a sale and distribution.

M. S. Layne made no claim except to the land below the mouth of Tom's creek upon which he lived and which he claimed by deed and adverse possession. His children, as the heirs at law of their mother, Syrena Layne, interpleaded, claiming title through the various execution sales and deeds made to their mother, by adverse possession and also relying upon plaintiffs' laches.

In reply to this it was alleged that the two brothers were cotenants in both farms and that the purchase of M. S. Layne at the Stratton sale inured to the benefit of both, and in the subsequent sale of that land under the Loar judgment only M. S. Layne's one-half interest was sold and that the purchases by Syrena Layne inured to the benefit of both defendants; that the two brothers were jointly holding the respective farms on which each lived, and that no adverse possession ran in favor of either; that in acknowledgment of this W. H. Layne cheerfully surrendered one-half of the Mead farm to the heirs of M. S. Layne.

It is further urged though not pleaded that a suit was brought in 1903 to settle the estate of Lindsey Layne and in that suit it was adjudged that the Mead and Stratton farms were jointly owned and held by W. H. and M. S. Layne, and that on appeal to this court that judgment was affirmed in the case of Layne v. Layne, 90 S. W. 555; that only ten years elapsed from the affirmance of that judgment until this suit was brought. The chancellor dismissed the petition and plaintiff appeals.

As stated above, we understand that the land conveyed in 1865 by J. M. Davidson, sheriff, to M. S. Layne was below the mouth of Tom's creek, and plaintiffs specifically waive all claims to the land below the mouth of Tom's creek, but as there is not sufficient similarity in the boundaries of the various deeds to locate the different tracts in the absence of the map to which reference was made in the evidence, it may be that we are mistaken in this. If so, the presumption would be against the appellants, who failed to put the map in the record. But passing this, the land purchased by M. S. Layne was sold to pay the debts of Lindsey Layne. If below the mouth of Tom's creek it was outside the bounday of the title bond and would not inure to the benefit of W. H. Layne. If above the mouth of that creek it was inside the boundary of the title bond and W. H. Layne had an equity therein, as the purchase of an outstanding incum-

brance by one tenant inures to the benefit of the cotenant, but even then in order to secure the benefit thereof such tenant would be required within a reasonable time to ratably indemnify the purchaser for the purchase money. Spurlock v. Spurlock, 161 Ky. 248, and authorities there cited.

Further, as to the purchase of Mrs. Syrena Layne, it affirmatively appears that she was possessed of considerable funds inherited from her father's estate; that both W. H. and M. S. Layne were heavily involved and it does not appear that she was acting in behalf of either. She did not redeem the land, but assumed the debt of the purchaser and took an assignment thereof. In doing this she did not claim to act as a privy to the parties or as a volunteer in redemption, but as a *bona fide* purchaser in her own behalf. Even if it was said that her purchase operated in behalf of the cotenancy, in order for W. H. Layne or his heirs to avail themselves of the benefits of her purchases, as suggested above, they would have had to ratably reimburse her in her expenditures within a reasonable time.

Fifty-one years elapsed from the time M. S. Layne made his purchase to the date this suit was brought, and thirty odd years elapsed from the time Mrs. Layne made these various purchases before it was filed, and it is affirmatively shown that W. H. Layne never offered to refund any part of the consideration to them. So that unless some excuse is made for these laches they militate strongly against appellants' contention.

Further, subsequent to the various execution sales mentioned and the various purchases by Syrena Layne, in which practically all of the farm was sold, she and her children assumed control under her purchases and for thirty-five years prior to the filing of this lawsuit they were in possession of same and exercising notorious claims of ownership which were hostile and inconsistent with the theory of cotenancy. Her children located on different parts of the farm, erected dwellings and outbuildings and used same under a claim of right. At one time she sold as much as $3,000.00 of timber off the place and during all of that period W. H. Layne lived within three miles of M. S. Layne; he was frequently present and was fully conversant with all that was transpiring. He neither offered to repay any of the funds which had been expended by Mrs. Syrena Layne in the

purchase of the lands nor objected to the use and possession thereof by M. S. Layne's family or made any claim thereto himself, except it is stated by his wife and children that he so claimed it.

On the other hand, without objection and mostly in answer to questions propounded by appellants' counsel, M. S. Layne testified that W. H. Layne abandoned the tenancy in the '80's at a time when they were overwhelmed with debt, and that witness told him he was claiming the lands and was going to hold them, and that W. H. Layne acquiesced therein. That further M. S. Layne's interest in the Mead farm was sold under execution and purchased by his wife, Syrena Layne, and a division of same had between her heirs and those of W. H. Layne, who was able to hold his half thereof as a homestead. The judgment in the suit to settle the estate of Lindsey Layne has no controlling force. The proceedings and judgment in that suit were not pleaded in this and we do not know what the issues were in it, or to what time the judgment related or whether it had any bearing upon the issues involved here, hence it cannot be regarded as *res adjudicata.*

Omitting this judgment, the possession of the appellees, if adverse, had continued for much more than fifteen years before the filing of this suit. It is true that to constitute an adverse holding against a cotenant the possession and claim must be open, notorious and hostile, and known to him to be so.

The evidence indicates that such was the character of appellees' possession. This was the opinion of the chancellor; he was acquainted with the parties and the witnesses, and familiar with the general situation. In a confused state of facts such as this his opinion is entitled to some weight. Seeing no reason to disturb his finding the judgment is affirmed.